COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Annunziata

UNPUBLISHED

RICHARD EPPS

v.      Record No. 0030-21-1

PORTSMOUTH DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
JUNE 29, 2021

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

(Elliott O. Moody; Eric O. Moody & Associates, P.C., on brief), for
appellant.

(Burle U. Stromberg, Interim City Attorney; Shelia C. Riddick,
Assistant City Attorney; Barrett Richardson, Guardian *ad litem* for
the minor child; Richardson & Rosenberg, LLC, on brief), for
appellee.

Richard Epps (father) appeals the circuit court's order terminating his parental rights to

his daughter. Father argues that the circuit court erred in finding that there was sufficient

evidence to terminate his parental rights under Code § 16.1-283(C). Upon reviewing the record

and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we affirm

the decision of the circuit court. See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Father and Jeneve Marshall (mother) are the biological parents to the daughter who is the subject of this appeal.[2] In September 2015, mother was arrested after she entered her son's school and held down a student at that school while that student was assaulted. After her arrest, mother had arranged for a friend to care for her daughter, but the friend could not provide long-term care. The child, who was then three years old, entered foster care on September 21, 2015. The City of Portsmouth Juvenile and Domestic Relations District Court (the JDR court) subsequently adjudicated that the child was abused or neglected and entered a dispositional order.

The Portsmouth Department of Social Services (the Department) spoke with father, who lived in Texas. Father suggested his mother, Diana Gibson (the paternal grandmother), as a possible placement for the child. Because the paternal grandmother lived in Texas, the Department requested an assessment of the paternal grandmother through the Interstate Compact on the Placement of Children (ICPC) three times, but the request was denied every time, most recently in April 2019.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Both father and mother have other children who are not the subject of this appeal.

While father did not always keep the Department aware of his whereabouts, the paternal grandmother maintained contact with the Department and informed the social worker that father was incarcerated in March 2017.[3] The Department sent father a letter while he was incarcerated to update him on the status of the child and encourage him to send letters and pictures for the child. Father did not send anything for the child and reiterated that he would like the paternal grandmother to be considered as a placement for the child. Father remained incarcerated for approximately three years. Upon father's release from incarceration, the Department spoke with father and learned of his plans to live with the paternal grandmother in Texas.

On June 10, 2020, the JDR court terminated father's parental rights and approved the foster care goal of adoption.[4] Father appealed the JDR court's rulings to the circuit court.

On October 29, 2020, the parties appeared before the circuit court. The Department presented evidence that the child was eight years old and had been in foster care for five years. The child had resided with the same foster family since May 2016 and had a "good relationship" with them. The Department explained that the child had special needs, for which she took medication and participated in therapy.

Father testified that he last saw the child in August 2015 and had made no attempts to visit with her while she was in foster care. He explained that he did not see the child between August 2015 and his incarceration in 2017 because he "just couldn't do it at that moment." While the child was in foster care, father's only contact with the child was three or four telephone calls that lasted approximately five minutes each.[5] The child had called to speak with

---

[3] Father was incarcerated for a drug court violation.

[4] Mother signed an entrustment agreement and voluntarily relinquished her parental rights to the child.

[5] According to the record before us, father last spoke with the child on June 7, 2020.

the paternal grandmother or mother, and father was included in the phone call; he did not initiate any of the calls. Father did not send the child any letters or presents himself, but the paternal grandmother sent her cards and presents. Father testified that he could not travel to Virginia to see the child because he was working and attending Alcoholics Anonymous and Narcotics Anonymous meetings.

Father asked the circuit court not to terminate his parental rights to the child because he "really didn't have a part in losing her" and was now "focused on the right path." He admitted that he thought the paternal grandmother or mother would receive custody of the child, but since "that didn't work out," he was interested in having custody.

After hearing the evidence and arguments, the circuit court took the matter under advisement. The circuit court subsequently issued a letter opinion, finding that the evidence was sufficient to terminate father's parental rights under Code § 16.1-283(C)(1) and (C)(2) and that the termination was in the child's best interests. The circuit court entered an order memorializing its ruling. This appeal followed.

## ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court found that it was in the best interests of the child to terminate father's parental rights under Code § 16.1-283(C)(1) and (2). Termination under Code § 16.1-283(C)(1) requires clear and convincing evidence that

> [t]he parent [has] . . . without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.

"Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition . . . ." Id.

Father argues that the circuit court erred in terminating his parental rights. He asserts that it would not be in the child's best interests to terminate his parental rights. He contends that he had not failed to maintain continuing contact without good cause because he had lived out of state when the child entered foster care and then he was incarcerated. Father further argues that the circuit court erred in finding that the Department made reasonable and appropriate efforts to assist him in remedying the conditions that led to the child's placement in foster care because the Department had provided no services to him.

The circuit court found that the Department made "reasonable and appropriate efforts to offer services to [father] and to strengthen the parent/child relationship," but father "failed to maintain continuing contact with [the child] and . . . made no plan for her future." "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)).

The Department had contact with father when the child entered foster care and informed him of the emergency removal hearing. The Department also offered to arrange visitation between father and the child, but he never asked to visit with her. Rather, father suggested that the Department consider the paternal grandmother, not him, as a possible placement for the child. As requested, the Department investigated the paternal grandmother as a potential placement, but the ICPC was denied three times.

Father was incarcerated for approximately three out of the five years that the child was in foster care. Contrary to father's arguments, the Department was not required to offer him services while he was incarcerated. See Harrison, 42 Va. App. at 163-64. This Court has held that "[i]t would be patently unreasonable to require the Department, under such circumstances, to continue to offer services." Id. Nevertheless, during father's incarceration, the Department encouraged him to send cards, letters, and pictures to the child. Father did not do so.

Upon his release from incarceration, the Department spoke with father, and he continued to state that "his plan was always for his mom to get her." Father spoke to the child on the telephone three or four times, for approximately five minutes each time. Father did not initiate any of the calls. Moreover, father did not always maintain contact with the Department; at the time of the circuit court hearing, the social worker did not know where father was living. The Department "is not required to force its services upon an unwilling or disinterested parent." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 323 (2013) (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130.

Father made no attempts to see the child, either before or after his incarceration. The circuit court found that within the first six months of the child being in foster care, the Department "had initial contact with [father], but he provided no substantial planning for [the child's] future." Father repeatedly told the Department to consider the paternal grandmother, not

him, as a possible placement. The circuit court further found that father "never took any steps toward achieving permanency for [the child] or toward coming to retrieve her."

During the circuit court hearing, father indicated that he wanted to care for the child, but he presented no evidence of any definitive plans for the child. Father's childcare plan was simply "school and daycare." He was not familiar with the child's diagnoses, and he had not spoken with the child's therapists or teachers. Father had not seen the child in over five years and had not spoken to her in months. The circuit court found that father and the child had "no meaningful relationship." Father was not in a position to care for the child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the totality of the record, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(1).[6]

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed. Rule 5A:27.

Affirmed.

---

[6] "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." Castillo, 68 Va. App. at 574 n.9; see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Because we find that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(1), we, therefore, do not reach the question of whether father's parental rights should also have been terminated under Code § 16.1-283(C)(2).